Darrell TOOLEY, on behalf of himself
and all others similarly situated,
Plaintiff and Appellant,

v.

Diane ALM, Executive Director of the
North Dakota Workers Compensation
Bureau, and North Dakota Workers
Compensation Bureau, Defendants and
Appellees.

Civ. No. 930358.

Supreme Court of North Dakota.

April 20, 1994.

Glen R. Bruhschwein, Mackoff, Kellogg, Kirby & Kloster, P.C., Dickinson, for plaintiff and appellant.

Dean J. Haas, Asst. Atty. Gen., ND Workers Compensation Bureau, Bismarck, for defendants and appellees.

SANDSTROM, Justice.

The plaintiff in this action, Darrell Tooley, seeks certification of a class action in order to compel the North Dakota Workers Compensation Bureau to notify and screen claimants for potential permanent partial impairment awards. Tooley appeals from a judgment dismissing his action for a declaratory judgment and a writ of mandamus against the bureau and its executive director. We hold Tooley has not shown a clear legal right to the relief requested and has an adequate legal remedy which has not been exhausted. We therefore affirm the district court judgment.

## I

On September 3, 1987, Tooley was injured in the course of his employment and filed a claim with the bureau for benefits. The bureau accepted Tooley's claim and paid him benefits of $26,348.59 for disability, doctors, hospital, drugs, rehabilitation, and miscellaneous expenses. As of May 5, 1991, the bureau had not awarded Tooley any benefits for permanent partial impairment.

Tooley, "on behalf of himself and all others similarly situated," brought this action against the bureau and its executive director for declaratory relief and a writ of mandamus, alleging he and other members of a proposed class were entitled to notice of their right to request a permanent partial impairment award and to have an evaluation for permanent partial impairment. Tooley moved to certify the lawsuit as a class action, asserting he and the other proposed class members have reached maximum medical improvement and have a clear legal right to notification of their right to request an award for permanent partial impairment and to an impairment evaluation.

The bureau moved to dismiss Tooley's action, asserting the district court lacked jurisdiction because Tooley had an adequate remedy at law and had failed to exhaust his administrative remedies. The district court agreed and dismissed Tooley's complaint, concluding it lacked jurisdiction because an administrative appeal provided him with a plain, speedy, and adequate remedy in the ordinary course of law and he had not exhausted his administrative remedies. Tooley appealed.

## II

We consider Tooley's arguments in the context of the district court's authority to grant declaratory relief and a writ of mandamus. Art. VI, § 8, of the North Dakota Constitution grants the district court original jurisdiction of all causes, except as otherwise provided by law,[1] appellate jurisdiction as

---

1. N.D.C.C. § 27–05–06 provides:
   "*Jurisdiction of district courts.* The district courts of this state have the general jurisdiction conferred upon them by the constitution, and in the exercise of such jurisdiction they have power to issue all writs, process, and commissions provided therein or by law or

   which may be necessary for the due execution of the powers with which they are vested. Such courts have:
   "1. Common-law jurisdiction and authority within their respective judicial districts for the redress of all wrongs committed against the laws of this state affecting persons or property.

may be provided by law or by rule of the Supreme Court, and jurisdiction to issue necessary writs. *Rudnick v. City of Jamestown*, 463 N.W.2d 632, 635 (N.D.1990).

■ Chapter 32–23, N.D.C.C., authorizes courts of record to issue declaratory judgments. N.D.C.C. § 32–23–02 provides "any person ... whose rights, status, or other legal relations are affected by a statute ... may have determined any question of construction or validity arising under the ... statute ... and may obtain a declaration of rights, status, or other legal relations thereunder." A court's authority to grant declaratory relief, however, requires the exhaustion of administrative remedies. *Transportation Division of Fargo Chamber of Commerce v. Sandstrom*, 337 N.W.2d 160, 162–63 (N.D. 1983); *Shark Brothers Inc. v. Cass County*, 256 N.W.2d 701, 705–06 (N.D.1977). *See Amerada Hess Corp. v. Conrad*, 410 N.W.2d 124, 126 (N.D.1987).

■ Tooley cites *Shark Brothers* to argue the doctrine of exhaustion of remedies is not firmly established in the administrative agency context. In *Shark Brothers*, however, this Court affirmed the dismissal of an action for declaratory and injunctive relief to restrain a 1976 tax assessment of certain property. Recognizing the use of the property had not changed from prior tax years and the property's taxable status was involved in both a pending administrative appeal for the prior years and the action for declaratory judgment, this Court said:

"We do not favor or encourage, nor can we sustain, bifurcated self-induced or self-initiated procedures, one in the administrative process and one in the judicial process covering the same legal questions.

"If such bifurcated procedures were encouraged or sustained, it would create duplication, and uncertainty, and waste man-

power and money, with no appreciable result, and all without improving the administration of justice. If one side of a proceeding were permitted to proceed both in the administrative channels and the judicial channels at the same time the other side could also resort to the same procedure. The result would be endless confusion, which we can ill afford."

*Shark Brothers* at 705–06.

In *Sandstrom*, this Court reviewed the dismissal of an action for injunctive and declaratory relief challenging a rate increase which had been approved by the Public Service Commission. The Court reiterated its position on bifurcated proceedings and affirmed the dismissal because the plaintiff failed to follow the statutory procedure for appealing the rate increase. *See Amerada Hess Corp. v. Conrad*, 410 N.W.2d 124, 126–27 n. 1 (N.D.1987) (doubt expressed about propriety of declaratory judgment for questions arising from tax commissioner's assessment of additional oil and gas production taxes). *Compare In Interest of McMullen*, 470 N.W.2d 196, 199–200 (N.D.1991) (declaratory relief available to resolve issue which is not subject to administrative determination). Contrary to Tooley's argument, the requirement for exhaustion of remedies is well established for administrative decisions.

■ Similar principles govern the availability of mandamus to compel performance of an act by an administrative agency. N.D.C.C. § 32–34–01 authorizes a district court to issue a writ of mandamus to "any inferior tribunal, corporation, board, or person to compel the performance of an act which the law specifically enjoins as a duty." Mandamus may be used to compel performance of a ministerial duty, but may not be used to compel performance of discretionary acts. *Lund v. North Dakota Highway De-*

---

"2. Power to hear and determine all civil actions and proceedings.

"3. All the powers, according to the usages of courts of law and equity, necessary to the full and complete jurisdiction of the causes and parties and the full and complete administration of justice, and to carrying into effect their judgments, orders, and other determinations, subject to a reexamination by the supreme court as provided by law.

"4. Jurisdiction of appeals from all final judgments of municipal judges and from the determinations of inferior officers, boards, or tribunals, in such cases and pursuant to such regulations as may be prescribed by law.

"5. Jurisdiction over actions by game and fish officials involving the confiscation of materials determined to be in excess of one thousand dollars in value."

*partment,* 403 N.W.2d 25, 27 (N.D.1987). An applicant for a writ of mandamus must demonstrate a clear legal right to the performance of an act and must have no other plain, speedy, and adequate remedy in the ordinary course of law. *Old Broadway Corp. v. Backes,* 450 N.W.2d 734, 736 (N.D.1990). Mandamus is not available if an appeal is authorized from an adverse decision of an administrative agency. *Newman Signs, Inc. v. Hjelle,* 300 N.W.2d 860, 862 (N.D.1980).

In *Wallace v. North Dakota Workmen's Compensation Bureau,* 69 N.D. 165, 284 N.W. 420, 423 (1939), this Court affirmed the granting of a writ of mandamus to compel the bureau to allow a claimant to inspect the bureau's medical records and files regarding termination of his benefits, because the claimant was entitled to inspect records which the bureau had used as a basis to terminate his benefits and he had no other plain, speedy, and adequate remedy in the ordinary course of law. *Compare Manikowske v. North Dakota Workmen's Compensation Bureau,* 373 N.W.2d 884, 887 (N.D.1985) (writ of certiorari not available to compel full evidentiary hearing on claim for workers' compensation benefits where claimant failed to timely appeal denial of benefits after informal hearing). *Wallace* illustrates mandamus is available to compel an administrative agency to perform a ministerial duty which the law requires the agency to perform, but mandamus is not available to direct how, or in whose favor, the agency decides a case. *Mogaard v. City of Garrison,* 47 N.D. 468, 182 N.W. 758, 760 (1921).

■ Although N.D.C.C. §§ 65–01–01 and 65–05–06 abolish all civil actions and claims for relief for personal injuries by employees against employers in most hazardous employment and all jurisdiction of courts over those causes, a petition for a writ of mandamus seeks to compel performance of a ministerial duty which the law requires to be performed and is not an action for personal injuries. *Compare Barsness v. General Diesel & Equipment,* 422 N.W.2d 819, 823–24 (N.D. 1988) (action based upon express contract of indemnification between employer and third-party tortfeasor is exception to exclusive remedy rule of workers compensation, be-

cause it is an action on a separate legal claim based upon contract and not an action for damages). Those statutes do not preclude the use of mandamus to compel the bureau to perform a ministerial act which the law specifically requires, if there is no right to appeal from the bureau's failure to perform the act. *Wallace.* *See generally* 82 Am.Jur.2d, Workers' Compensation §§ 525, 696 (1992); 52 Am.Jur.2d, Mandamus § 162 et seq. (1970).

■ We decline to hold mandamus is never available to compel the bureau to perform an act which the law specifically requires it to perform. *See Investment Rarities, Inc. v. Bottineau County Water Resource District,* 396 N.W.2d 746, 748 (N.D.1986) (although there was no statutory authority for appeal, administrative determination by State Engineer could be reviewed through special proceedings such as mandamus, certiorari, or prohibition). Rather, the inquiry is on whether a petitioner for mandamus has a clear legal right to compel the bureau to perform an act and whether the petitioner has an adequate legal remedy in the ordinary course of law, which both require consideration of the nature of Tooley's underlying claim.

### III

#### A

Tooley asserts the bureau must notify him and others in his proposed class of their right to request an award for permanent partial impairment and of their right to an impairment evaluation under N.D.C.C. § 65–05–12 and N.D.A.C. § 92–01–02–25. He also asserts the bureau must send potential impairment claimants the form required by N.D.A.C. § 92–01–02–25(5).

N.D.C.C. § 65–01–02(26) defines "permanent impairment" as:

"the loss of or loss of use of a member of the body existing after the date of maximum medical improvement or recovery, and includes disfigurement resulting from an injury if such disfigurement diminishes the ability of the employee to obtain employment. The loss must be determined in accordance with and based upon the most

current edition of the American medical association's 'Guides to the Evaluation of Permanent Impairment'. Any impairment award, not expressly contemplated within the American medical association's 'Guides to the Evaluation of Permanent Impairment', must be determined by clear and convincing medical evidence."

N.D.C.C. § 65–05–13 authorizes impairment awards for scheduled injuries for the permanent loss of a member. N.D.C.C. § 65–05–12 authorizes permanent impairment awards for nonscheduled injuries and requires the injured employee's doctor to report "any rating of any impairment of function as the result of the injury on the date of maximum medical improvement, except for total losses claimed under section 65–05–13."

N.D.A.C. § 92–01–02–25 outlines the required procedure for resolving a "dispute" about the percentage of an employee's permanent impairment. N.D.A.C. § 92–01–02–25(1) defines "dispute" to mean "an employee has reached maximum medical improvement in connection with a work injury, the employee's doctor has filed with the bureau a report of the rating of impairment of function, and the bureau fails or refuses to award permanent impairment benefits based upon that report within thirty days of receipt of the report." N.D.A.C. § 92–01–02–25(5) provides:

> "An employee is not entitled to an award for permanent impairment until after the employee is at maximum medical improvement. Upon receipt of a report from the employee's doctor indicating the employee has reached maximum medical improvement and evidence the employee has a permanent impairment as a result of the work injury, the bureau shall send a form to the employee on which the employee shall identify all body parts the employee believes are permanently impaired due to the work injury. The employee must complete the form and return it to the bureau. The bureau shall then forward the report to the employee's doctor and instruct the doctor to examine the employee and report to the bureau any rating of impairment of function resulting from the work injury."

Although we construe the Workers' Compensation law liberally in favor of injured workers to promote their well-being (*Kroeplin v. North Dakota Workmen's Compensation Bureau,* 415 N.W.2d 807, 809 (N.D.1987)), the plain language of those statutes and regulations does not require the bureau to affirmatively notify claimants of the availability of impairment benefits. *Compare Clark v. Chrysler Corp.,* 342 So.2d 902 (Ala.1977) (no language in compensation act which indicates, or even suggests, the employer is under an obligation to advise an employee of workmen's compensation benefits); *Devlin v. Galusha, Higgins & Galusha,* 202 Mont. 134, 655 P.2d 979, 981 (1982) (employer under no duty to inform claimant of rights); *Roberts v. Workmen's Compensation Appeal Board,* 104 Pa.Cmwlth. 114, 521 A.2d 100, 103 (1987) (workers' compensation law does not place affirmative duty on employer to advise claimant of rights under act). *See also Permanente Medical Group/Kaiser Foundation Hospitals v. Workers' Compensation Appeals Board,* 171 Cal.App.3d 1171, 217 Cal.Rptr. 873, 878 (Cal.App.3d 1985) (employer has statutory duty to notify employee of possible entitlement to benefits); *Gall Silica Mining Co. v. Sheffield,* 401 So.2d 1169, 1170 (Fla.Dist.Ct.App.1981) (employer has statutory duty to inform worker of possible entitlement to wage loss and other benefits and of obligation to report a claimed wage loss); *Bennett v. Scrivner, Inc.,* 694 P.2d 932, 934 (Okla.1985) (employer has statutory duty to advise employee of right to file compensation claim and failure to notify tolls statute of limitations). The absence of any such affirmative duty on the part of the bureau to notify potential claimants is in harmony with "the time-honored principle that all persons are presumed to know the law." *State v. Carpenter,* 301 N.W.2d 106, 110 (N.D.1980). Employers do, however, have a statutory duty to display, in a conspicuous manner reasonably calculated to inform employees, a certificate showing workers' compensation coverage. N.D.C.C. § 65–04–04. We conclude, in the absence of a contrary statutory or regulatory duty, claimants do not have a clear legal right to require the bureau to notify them of the availability of impairment benefits.

Under N.D.C.C. § 65–05–12 and N.D.A.C. § 92–01–02–25, the bureau is to provide an impairment evaluation and to send an impairment form to the claimant upon a report by the claimant's doctor indicating a "rating of any impairment of function as a result of the injury on the date of maximum medical improvement" and a dispute about the percentage of impairment. If there is medical evidence of impairment and a dispute about the percentage of impairment, N.D.A.C. § 92–01–02–25 governs the procedure for resolving the dispute, including the use of an impairment form. *See also* N.D.C.C. § 65–05–12.1. Under the regulation, the bureau's obligation to send an impairment form to a claimant does not arise until there is medical evidence of impairment and a dispute about the percentage of impairment.

The bureau has interpreted those provisions to entitle a claimant to an impairment evaluation and award if the claimant's doctor reports maximum medical improvement and there is medical evidence of impairment. According to the bureau, an award of disability or rehabilitation benefits does not itself require the bureau to send a claimant an impairment form, to schedule an impairment evaluation, or to award impairment benefits. *See Kroeplin v. North Dakota Workmen's Compensation Bureau*, 415 N.W.2d 807, 809 (N.D.1987) (an award for disability compensates for loss of earning capacity, while an award for impairment compensates for impairment, loss, loss of use, or partial loss of use of a portion of the body); N.D.C.C. § 65–01–02(13) ("Disability" means "loss of earnings capacity."). Instead, the bureau interprets N.D.C.C. § 65–05–12 and N.D.A.C. § 92–01–02–25 to require a doctor's report of maximum medical improvement and medical evidence of impairment before an impairment evaluation or impairment form is warranted in order to "husband its resources and spend the sums for a doctor to evaluate an employee only if there is reasonable cause to believe an impairment may exist." The bureau's interpretation of those requirements is consistent with the statutory language and is entitled to deference (*Holtz v. North Dakota Workers Compensation Bureau*, 479 N.W.2d 469, 470 (N.D.1992)), and conforms with the claimant's burden of proving entitlement to

participate in the fund. N.D.C.C. § 65–01–11. *See Clark v. Chrysler Corp.; Devlin v. Galusha, Higgins & Galusha.*

### B

■ Tooley also asserts N.D.C.C. § 65–01–14 requires the bureau to notify him and others in the proposed class of any "informal decision" they are not entitled to an impairment evaluation or award.

N.D.C.C. § 65–01–14 governs the procedure when a claim or a reapplication for benefits is made under Title 65. It authorizes the bureau to render an "informal decision on the claim after filing of the claim and the physician's certificate" and requires the bureau to serve a "notice of decision" on the parties. N.D.C.C. § 65–01–14(4). If any party requests reconsideration of an informal decision, the bureau must issue an order conforming to N.D.C.C. ch. 28–32, and thereafter any party may request a rehearing or may appeal. N.D.C.C. § 65–01–14(5) also authorizes the bureau to hold "informal proceedings to determine any matter subject to its jurisdiction" and requires the bureau to give the parties a "notice of decision" and "notice of the right to request reconsideration."

■ We are not persuaded the bureau holds "informal proceedings" requiring a "notice of decision" whenever a claimant's file is evaluated. We construe statutes to avoid absurd and ludicrous results. *County of Stutsman v. State Historical Society*, 371 N.W.2d 321, 325 (N.D.1985). N.D.C.C. § 65–01–14 outlines the procedure "when a claim for benefits or reapplication for benefits" is made under Title 65, and contemplates a "notice of decision" when a final determination is made on a claim or on a reapplication. We believe it would be absurd to require the bureau to issue a "notice of decision" every time the bureau conducts any investigation or review of a claimant's file.

### C

■ A claimant's time for appeal does not begin to run until a notice of decision is given by the bureau. N.D.C.C. § 65–10–01; 28–32–15. There is nothing in this record to

indicate Tooley could not request, or the bureau would not issue, an order delineating his rights so any impairment issues raised by him in this case could be resolved in an appeal. *See* N.D.C.C. § 28–32–19 (scope of review of agency decision). Related issues have been successfully raised in appeals from decisions of the bureau.[2] *E.g., Beckler v. North Dakota Workers Compensation Bureau,* 418 N.W.2d 770, 775 (N.D.1988) (bureau's pretermination procedure for terminating disability benefits deprived claimant of due process). Tooley's claims ignore the bureau's normal fact finding function and procedure for appeals of decisions by the bureau, which provide him with an adequate legal remedy.

## IV

Tooley's right to appeal a bureau decision provides him with an adequate legal remedy which he has not exhausted, and he has not shown a clear legal right to have the bureau notify him of the availability of impairment benefits, schedule an impairment evaluation, send him an impairment form, or issue a notice of decision under N.D.C.C. § 65–01–14. He is therefore not entitled to declaratory relief or a writ of mandamus.[3]

The district court judgment dismissing Tooley's action is affirmed.

VANDE WALLE, C.J., and LEVINE and MESCHKE, JJ., concur.

---

**2.** N.D.C.C. § 65–10–01 authorizes appeals from decisions of the bureau. We have construed those provisions in harmony with the general provisions for appeals from decisions of administrative agencies in N.D.C.C. § 28–32–15. *Westman v. North Dakota Workers Compensation Bureau,* 459 N.W.2d 540 (N.D.1990).

**3.** Tooley also argues because there is no adequate procedure for certifying a class action at the administrative level, mandamus or declaratory relief is necessary to require the Bureau to address the common questions of law and fact posed by him and others similarly situated. However, he cannot successfully argue mandamus or declaratory relief is justified to protect the rights of others in his attempt to attain class action status, and he has presented no other persuasive reason to justify a class action for his lawsuit.